UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 20-CR-35

MICHAEL MAPES,

        Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney, and the defendant, Michael Mapes, individually and by attorney Kathleen M. Quinn (in this case, of-counsel to Zetley Law Offices, S.C.), pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in a one-count information, which alleges a violation of Title 26, United States Code, Section 7206(1).

3.      The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.      The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the charge in the information, which is set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES THAT:**

On or about October 15, 2016, in the State and Eastern District of Wisconsin,

**MICHAEL MAPES**

did willfully make and subscribe a U.S. Individual Income Tax Return (Form 1040, hereinafter "the return") for himself and his wife for the calendar year 2015 that was verified by a written declaration that it was made under the penalties of perjury, which return Mapes did not believe to be true and correct as to every material matter in that Mapes indicated on the return that for the year 2015, he and his wife had total income of $524,916, taxable income of $492,145, and total tax owed of $145,866, whereas, in fact, and as Mapes well knew, during 2015, he and his wife had total income, taxable income, and total tax owed substantially greater than he reported on the return.

All in violation of Title 26, United States Code, Section 7206(1).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense charged in the information and set forth above in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A to this agreement beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt.

The information in Attachment A is provided for the purpose of setting forth a factual basis for the defendant's plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Up to three

years of imprisonment and a fine of up to $250,000. The count also carries a mandatory special assessment of $100, and a maximum of one year of supervised release. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraphs 27-37 of this agreement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of submitting a false tax return, in violation of 26 U.S.C. § 7206(1) as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant made and subscribed a tax return that was false as to a material matter;
>
> Second, the return contained a written declaration that it was made under the penalties of perjury; and
>
> Third, the defendant did not believe the return to be true and correct as to every material matter; and
>
> Fourth, the defendant acted willfully.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and understand that, prior to sentencing, the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 2T1.1, the sentencing court will consider all conduct violating the tax laws unless the evidence demonstrates that the conduct is clearly unrelated, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty, and will use the total amount in calculating the sentencing guidelines range

4

16. The parties agree to recommend to the sentencing court that for purposes of determining the defendant's offense level under the sentencing guidelines, the tax loss associated with the defendant's criminal conduct is more than $100,000 but less than $250,000.

### Base Offense Level

17. The parties agree to recommend to the sentencing court that, based upon their agreement that tax loss associated with the defendant's criminal conduct is more than $100,000 but less than $250,000, the applicable base offense level for the offense charged in the information is 16, as determined under Sentencing Guidelines Manual §§ 2T1.1(a)(1) and 2T4.1(F).

### Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentence imposed by the court.

23. The government agrees to recommend a sentence no greater than the bottom of the applicable sentencing guideline range, as determined by the court. Recognizing that the Guidelines are advisory rather than mandatory, the defendant reserves the right to argue for a sentence that is less than the sentence that might otherwise be imposed under the Guidelines, including a sentence of probation.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in

6

the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

## Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

27. The defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), to pay restitution to the Internal Revenue Service for the taxes he underreported and underpaid for himself and his business, Manufacturer's Pallet Disposal, Inc. ("MPD") for the years 2012-2015, as well as interest on such taxes, in the total amount of $259,577.38, plus interest to be calculated through the date of sentencing.

28. The total amount of restitution consists of the following:

| Tax year | Amount to be credited to tax | Interest under the Internal Revenue Code Due through March 1, 2020 |
|---|---|---|
| 2012 (Mapes) | $13,271 | $4,108.23 |
| 2012 (MPD) | $18,635 | $5,830.99 |
| 2013 (Mapes) | $20,234 | $5,480.63 |
| 2013 (MPD) | $29,247 | $8,016.74 |
| 2014 (Mapes) | $15,636 | $3,647.95 |

7

| Tax year | Amount to be credited to tax | Interest under the Internal Revenue Code Due through March 1, 2020 |
|---|---|---|
| 2014 (MPD) | $16,436 | $3,886.30 |
| 2015 (Mapes) | $36,789 | $7,221.55 |
| 2015 (MPD) | $59,289 | $11,847.99 |

29. The defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that he agrees to pay as restitution. The defendant also agrees to sign IRS Form 8821, "Tax Information Authorization."

30. The defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

31. The parties understand that defendant will receive proper credit, consistent with paragraph 28 above, for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time periods covered by this agreement or any other time period.

32. The defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

33. The defendant agrees that, unless the Director of the Administrative Office of the United States Courts directs him otherwise, all payments made pursuant to the court's restitution order are to be sent only to the Clerk of the Court at the following address:

> Clerk of Court
> Eastern District of Wisconsin
> 517 East Wisconsin Avenue, Room 362
> Milwaukee, WI 53202

34. With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

- The defendant's name and Social Security number;
- The District Court docket number assigned to this case;
- Tax years for which restitution has been ordered; and
- A statement that the payment is being submitted pursuant to the District Court's restitution order.

35. The defendant agrees to include a request that the Clerk of the Court send the information, along with the defendant's payments, to the appropriate office of the Internal Revenue Service.

36. The defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

> IRS - RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

37. The defendant understands that he is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information,

unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to his particular liability.

## **DEFENDANT'S WAIVER OF RIGHTS**

38. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charge against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.
>
> b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.
>
> c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.
>
> d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.
>
> e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

10

Case 1:20-cr-00035-WCG   Filed 02/14/20   Page 10 of 16   Document 2

39. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

40. The defendant acknowledges and understands that he will be adjudicated guilty of the offense[s] to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

41. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### **Further Civil or Administrative Action**

42. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict

11

Case 1:20-cr-00035-WCG   Filed 02/14/20   Page 11 of 16   Document 2

rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

43. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

44. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

45. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

46. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

47. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

48. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to

12

appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

49. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2-11-2020

MICHAEL MAPES
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/11/20

KATHLEEN M. QUINN
Attorney for Defendant

For the United States of America:

Date: 2/14/20

MATTHEW D. KRUEGER
United States Attorney

Date: 2/13/2020

MATTHEW L. JACOBS
Assistant United States Attorney

14

# ATTACHMENT A: Factual Basis

At all times relevant to this prosecution and, in particular, during the years 2012-2015, defendant Michael Mapes ("Mapes") resides in Weyauwega, Wisconsin and was the sole owner and operator of a business called Manufacturer's Pallet Disposal, Inc. ("MPD"). MPD manufactured, repaired, and sold wooden pallets. MPD also recycled cardboard and sold mulch that was created from old pallets.

MPD was organized as a C corporation and, therefore, filed separate tax returns (Forms 1120) with the Internal Revenue Service ("IRS") reporting its income, expenses, and tax liability. Mapes came to the attention of the IRS after it received information that Mapes was regularly negotiating checks for cash and not depositing the cash to either his personal bank account or MPD's account. Based on this information, the IRS determined that the checks Mapes was cashing had been issued by businesses to which Mapes had sold assets belonging to MPD.

These assets consisted primarily of "Gaylord Boxes," which are large corrugated cardboard containers that typically sit on top of a pallet to hold material. The IRS identified 9 businesses that had purchase Gaylord boxes and other items from Mapes. During the years 2012-2015, these businesses paid Mapes more than $930,000 to purchase Gaylord boxes and other items. Despite the fact that MPD had paid for the Gaylord boxes and other items Mapes sold, Mapes typically provided an invoice in his own name and the businesses issued checks payable to Mapes.

One of the businesses purchasing Gaylord boxes from Mapes annually issued a Form 1099 reporting to the IRS the amount it had paid Mapes and Mapes reported this amount on the personal income tax returns he filed for the years 2012-2105. Mapes, however, failed to report more than $280,000 he had received from the other 8 businesses, which did not issue a Form 1099.

When contacted by the IRS, Mapes was generally cooperative and acknowledged that the only box receipts he knew were reported were those for which he received a Form 1099/

In addition to selling Gaylord Boxes, in 2015, Mapes engaged in two transactions that also generated income he failed to report. First, in June 2015, MPD purchased equipment and other assets from a business in Waupaca. That same month, Mapes sold some of the equipment to a third party for a total of $33,000. Mapes cashed the checks from the sale and failed to report the money on either MPD's tax return or his personal return; although MPD again deducted the cost of purchasing the equipment.

Later in 2015, MPD obtained additional equipment and material from the same Waupaca business in exchange for cleaning up and removing the material from the Waupaca business's premises. Mapes then bartered the material to a landscaping business in exchange for a credit for landscaping services, which the parties valued at $60,750. In 2015 and 2016, Mapes used this credit to pay for landscaping work at his home and a cottage he owned. Mapes did not report this barter transaction on either the tax returns filed by himself or for MPD.

The following is a summary of the income and taxes Mapes failed to report for himself and MPD for the years 2012-2015. As reflected in this summary, during these years, Mapes under-reported and underpaid his taxes for himself and his business by a total of $209,537.

| Year | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| Manufacturer's Pallet Disposal, Inc. (MPD) | | | | |
| Corporate Return | 1120 | 1120 | 1120 | 1120 |
| Unreported Gross receipts | $52,506.68 | $90,724.38 | $60,545.65 | $171,263.00 |
| Reported Total Tax | $83,348.00 | $10,858.00 | $8,233.00 | $13,319.00 |
| Corrected Total Tax | $110,797.00 | $101,211.00 | $102,506.00 | $151,413.00 |
| **Additional Tax (MPD)** | **$18,635.00** | **$29,247.00** | **$16,436.00** | **$59,289.00** |
| Michael Mapes | | | | |
| Personal Return | 1040 | 1040 | 1040 | 1040 |
| Reported Total Income | $316,837.00 | $527,508.00 | $438,249.00 | $524,916.00 |
| Corrected Total Income | $377,159.57 | $611,991.26 | $498,854.65 | $679,494.28 |
| Reported Taxable Income | $270,708.00 | $493,007.00 | $376,132.00 | $492,145.00 |
| Corrected Taxable Income | $331,030.56 | $583,366.29 | $436,908.60 | $653,036.28 |
| Reported Total Tax | $69,850.00 | $130,793.00 | $115,160.00 | $145,866.00 |
| Corrected Total Tax | $83,121.00 | $151,027.00 | $130,796.00 | $182,655.00 |
| **Additional Tax (Mapes)** | **$13,271.00** | **$20,234.00** | **$15,636.00** | **$36,789.00** |

The specific charge to which the defendant has agreed to plead guilty to concerns the personal tax return (Form 1040) Mapes filed for himself and his wife for the year 2015. This return, which was signed by Mapes under the penalties of perjury stating that to the best of his knowledge and belief it was true, correct and complete, was filed with the IRS on October 15, 2016. As summarized above, the return understated Mapes' income and taxes by falsely reporting that during 2015 Mapes and his wife had had total income of $524,916, taxable income of $492,145, and total tax owed of $145,866.